# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF NEW YORK

№ 13-CV-7153 (JFB)

UNITED GENERAL TITLE INSURANCE COMPANY,

Appellant,

VERSUS

CHRIS KARANASOS, A/K/A CHRISTOFOROS KARANASOS,

Appellee.

**MEMORANDUM AND ORDER**
September 5, 2014

JOSEPH F. BIANCO, District Judge:

This bankruptcy appeal arises out of the bankruptcy proceeding of debtor Chris Karanasos ("Karanasos" or "debtor") in the United States Bankruptcy Court for the Eastern District of New York (the "Bankruptcy Court"). On October 6, 2011, United General Title Insurance Company ("UGT") commenced an adversary proceeding against debtor, asserting that debtor's discharge should be denied pursuant to 11 U.S.C. § 727. Specifically, UGT alleged the following: (1) within one year of filing for bankruptcy, and with the intent to hinder, delay or defraud his creditors, debtor concealed a secret interest in real property that he had purportedly conveyed to his wife, see 11 U.S.C. § 727(a)(2)(A); and (2) debtor knowingly and fraudulently made certain material false oaths in his bankruptcy petition and accompanying schedules, see id. § 727(a)(4)(A). UGT and debtor agreed to a trial by stipulated record. On October 21, 2013, based on the stipulated record, the Bankruptcy Court determined that UGT had failed to establish either of its claims by a preponderance of the evidence. Thus, the Bankruptcy Court did not deny debtor a discharge. Specifically, the Bankruptcy Court held that (1) debtor had not concealed any secret interest in the property that he had conveyed to his wife; and (2) although debtor made two false oaths in his petition and the accompanying schedules, debtor had not done so with fraudulent intent.

On appeal, UGT contends that the Bankruptcy Court committed reversible error with respect to both of its holdings. For the following reasons, this Court agrees. Thus, the Court vacates the judgment of the Bankruptcy Court and remands the case to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order. As an initial matter, this Court reviews the Bankruptcy

1

Court's conclusions *de novo* because the Bankruptcy Court tried the case on a stipulated record. Under this standard of review, the Court concludes first that the Bankruptcy Court erred in determining that debtor had not concealed any interest in real property. The real property at issue is debtor's primary residence, which he and his wife owned as tenants by the entirety until 2008. In 2008, debtor purportedly conveyed all interest in his residence to his wife. However, even after conveying legal title to the residence, debtor continued to live there and to pay mortgage, utility, and real estate taxes. Moreover, debtor even filed a joint tax return with his wife, in which they took a deduction for mortgage interest payments. Finally, in the bankruptcy proceeding of debtor's wife, debtor's wife actually referred to her own interest in the residence as a tenancy by the entirety. All of these facts establish by a preponderance of the evidence that debtor concealed an ownership interest in his primary residence. Finally, under the well-established "continuing concealment" doctrine, the Court concludes that debtor concealed his ownership interest in his residence within one year of filing for bankruptcy. Thus, the Court remands the case to the Bankruptcy Court, so that the Bankruptcy Court may determine whether debtor harbored improper intent in concealing this interest for purposes of § 727(a)(2)(A). Second, in light of the Court's holding on debtor's concealment, the Court also concludes that debtor made a false oath by failing to disclose his ownership interest in his primary residence anywhere in his bankruptcy petition or accompanying schedules. The Court also agrees with the Bankruptcy Court that debtor made an additional false oath by failing to disclose the existence of a lawsuit against him in his petition or schedules. However, the Court does not find that debtor committed a false oath in describing his ownership interest in another property as "sole tenant," when he should have stated "tenant in severalty." Again, in light of the Court's determination concerning debtor's two false oaths, the Court remands the case to the Bankruptcy Court for a determination whether debtor made these false oaths with fraudulent intent, as § 727(a)(4)(A) requires.

I. BACKGROUND

A. Facts

The following facts are drawn from the stipulated record submitted in the Bankruptcy Court, which includes (1) eighteen exhibits; (2) the transcript of debtor's January 4, 2013, deposition; (3) a list of stipulated facts; and (4) debtor's trial affidavit. (*See* R-7,[1] Stipulation, Apr. 8, 2013.)

1. Debtor's Interests in Real Property

The instant appeal centers around debtor's ownership interests in real property located at 390 Woodbridge Road in Rockville Centre, New York (the "Rockville Centre Property") and 408 East 120 Street in New York, New York (the "Manhattan Property"). Accordingly, the Court examines the facts surrounding debtor's interests in those two properties.

Debtor began living at the Rockville Centre Property in 2002, when his wife Rosa Karanasos ("Mrs. Karanasos") acquired title to that property. (R-4, Joint Pre-Trial Memorandum ("JPTM") at 4, ¶¶ 1–4.) Mrs. Karanasos financed the purchase with a mortgage from Interamerican Bank. (JPTM Ex. A, Deposition of Chris Karanasos, Jan. 4, 2013 ("Debtor Dep."), at 16–17, 24–25.)

---

[1] "R-__" refers to the numbered documents in the record filed with the Court on December 16, 2013. (*See* ECF No. 1.)

2

Debtor and Mrs. Karanasos made payments on the mortgage from a joint checking account. (*Id.* at 25–26.) A little over one year later, debtor and Mrs. Karanasos mortgaged their home to Flagstar Bank, F.S.B., and Mrs. Karanasos satisfied the Interamerican mortgage. (*Id.* at 26–27; *see* JPTM at 5, ¶ 10.) At around the same time, by deed dated June 20, 2003, Mrs. Karanasos conveyed her interest in the Rockville Centre Property to herself and debtor. (JPTM at 5, ¶ 8; Debtor Dep. at 26–27.) After refinancing with Flagstar, debtor and Mrs. Karanasos made payments on the Flagstar mortgage from their joint checking account. (Debtor Dep. at 28.)

Also in 2003, debtor and his wife obtained a home equity line of credit from JPMorgan Chase Bank, N.A. (the "Chase HELOC") in the amount of $210,000. (*Id.* at 32–33; *see* JPTM at 5, ¶ 10; R-17, Ex. 9, Credit Line Mortgage.) Debtor and Mrs. Karanasos increased the Chase HELOC to $275,000 in 2005. (Debtor Dep. at 38.)

Sometime in 2008, debtor invested $200,000.00 in the Manhattan Property. (Debtor Dep. at 41, 65–67.) Specifically, debtor loaned $200,000.00 to the person who wanted to purchase the Manhattan Property, Mohammed Khan ("Khan"), and debtor and Khan acquired title to the Manhattan Property as joint tenants. (*Id.* at 65–67.) The terms of debtor's arrangement with Khan were as follows. Khan agreed to repay debtor $200,000.00, plus interest. (*Id.*) As collateral for the loan, Khan gave debtor an unrecorded deed conveying his interest in the Manhattan Property to debtor. (*Id.*) If Khan repaid debtor in full, Khan would have acquired sole ownership of the Manhattan Property. If Khan did not repay debtor, then debtor had the right to record the deed conveying the Manhattan Property from debtor and Khan to debtor. (*Id.*) As it turned out, Khan defaulted on the loan, and consequently, debtor acquired title to the Manhattan Property on September 29, 2008. (*Id.* at 67; JPTM at 6, ¶¶ 18–19; *see* R-21, Ex. 18, Deed.)

Debtor borrowed approximately $100,000.00 from the Chase HELOC in order to finance his transaction with Khan. (Debtor Dep. at 41–46.) Mrs. Karanasos did not approve of the transaction. (*Id.* at 41.) She allowed him to draw approximately $100,000.00 from the Chase HELOC, but only on the condition that debtor give her his ownership interest in the Rockville Centre Property. (*Id.* at 41–43; R-5, Trial Affidavit of Chris Karanasos ("Debtor Aff.") ¶ 2.) As debtor explained it, "for her the only way to let me borrow the money from my home line of credit as investment to this property, I had to take off my name from the deed to protect her and our children." (Debtor Dep. at 42.) Accordingly, debtor and Mrs. Karanasos conveyed the Rockville Centre Property to Mrs. Karanasos by deed that was dated December 17, 2008, and recorded on April 9, 2009. (JPTM at 5, ¶ 9.) The deed itself indicates that the consideration for the conveyance was $100,000.00. (R-16, Ex. 6, Deed.)

Although debtor conveyed his ownership interest in the Rockville Centre Property to Mrs. Karanasos, debtor continued to reside there, and he identified the Rockville Centre Property as his address in his petition for bankruptcy. (JPTM at 4, ¶¶ 4–5.) Moreover, debtor and Mrs. Karanasos continue to share the payment obligations associated with the mortgages on the Rockville Centre Property, and, according to Schedule J to his petition, debtor makes monthly mortgage and utility payments for the Rockville Centre Property. (*Id.* at 4–5, ¶¶ 6, 12.) In fact, debtor and Mrs. Karanasos took a deduction on their 2010 jointly filed tax return for real estate taxes and mortgage interest payments relating to the Rockville Centre Property.

(*Id.* at 5, ¶ 11.) Finally, in Schedule A to Mrs. Karanasos's separate petition for bankruptcy, she lists her ownership interest in the Rockville Centre Property as a tenant by the entirety. (*Id.* at 5, ¶ 13; *see* R-20, Ex. 13, Mrs. Karanasos's Petition.)

### 2. UGT's Claim against Debtor

During the time that debtor purchased the Manhattan Property and conveyed the Rockville Centre Property to his wife, debtor was a defendant in a civil suit brought by UGT in New York state court. (JPTM at 5, ¶ 14; *see* R-20, Ex. 14, Complaint.) In particular, on February 4, 2008, UGT commenced an action against GE Abstract, debtor, and Esther Serrano ("Serrano"). (*Id.*) Debtor and Serrano had been partners in GE Abstract, a title insurance agency that had acted as UGT's title insurance agent. (*Id.*; *see* Debtor Dep. at 10–12.) According to UGT's complaint, UGT had incurred liability to a third party in the amount of $504,000.00 as a result of GE Abstract's negligence. (R-20, Ex. 14, Complaint.) UGT sought to hold GE Abstract, debtor, and Serrano jointly and severally liable for $504,000.00. (*Id.*) On August 30, 2010, judgment entered against GE Abstract, debtor, and Serrano in the amount of $677,351.03 ($504,000.00 plus $172,611.03 in interest). (R-15, Ex. 15, Judgment.)

On or about November 5, 2010, UGT commenced a separate action against debtor and Mrs. Karanasos in New York state court. (JPTM at 5, ¶ 16; *see* R-21, Ex. 16, Complaint.) UGT sought a judgment declaring that the conveyance of the Rockville Centre Property from debtor and Mrs. Karanasos to Mrs. Karanasos was fraudulent and void as to UGT. (JPTM at 5, ¶ 16.) Debtor neither filed an answer nor otherwise appeared in that action. (*Id.*) The record is unclear, however, whether a judgment entered in this action.

### B. Bankruptcy Proceedings

Debtor filed a voluntary petition for relief under Chapter 7 of the Bankruptcy Code on July 3, 2011. (R-14, Ex. 1, Petition.) He listed the Rockville Centre Property as his street address on the petition. (*Id.*) On Schedule A to the petition, debtor listed the Manhattan Property as the only real property in which he owns an interest. (*See id.*) Debtor described his interest in the Manhattan Property as "sole tenant." (*Id.*) Debtor's petition does not indicate that he has any ownership interest in the Rockville Centre Property. (JPTM at 5, ¶ 15.) The petition does not mention UGT's fraudulent conveyance action against debtor, at all. (*Id.* at 6, ¶ 17.)

UGT commenced an adversary proceeding against debtor on October 6, 2011. (R-22, Bankruptcy Court Docket.) UGT alleged that debtor had concealed a secret interest in the Rockville Centre Property within one year before filing his petition for bankruptcy, and that he had done so with the intent to hinder, delay, or defraud his creditors. (*See* R-1, Complaint ¶¶ 58–62.) In addition, UGT claimed that debtor had failed to disclose his secret interest in the Rockville Centre Property, failed to disclose UGT's fraudulent conveyance action against debtor, and misrepresented his ownership interest in the Manhattan Property, all with fraudulent intent. (*Id.* ¶¶ 63–73.) Debtor answered the complaint on December 2, 2011. (R-22, Bankruptcy Court Docket.) Debtor moved for summary judgment on December 4, 2012, and the Bankruptcy Court denied debtor's motion on April 5, 2013. (*Id.*)

Thereafter, the parties agreed to proceed to trial on a stipulated record. (*Id.*) On

October 21, 2013, the Bankruptcy Court ordered that debtor would not be denied a discharge, and that debtor was entitled to recover his costs as the prevailing party. (*Id.*; *see* R-9, Bankruptcy Court Opinion ("Bankr. Ct. Op.").) First, the Bankruptcy Court found that UGT had failed to establish the existence of debtor's alleged secret interest in the Rockville Centre Property by a preponderance of the evidence. (Bankr. Ct. Op. at 8–9.) Because the Bankruptcy Court concluded that debtor had not concealed a secret interest in the Rockville Centre Property, the court did not consider whether debtor had acted with fraudulent intent. (*Id.* at 9.) Second, the Bankruptcy Court concluded that debtor should not be denied a discharge under § 727(a)(4)(A) on the basis of any alleged false oath. (*Id.* at 9–13.) Specifically, the Bankruptcy Court determined that debtor had not failed to list an ownership interest in the Rockville Centre Property, because he had none, and that debtor did not misstate the value of the Manhattan Property. (*Id.* at 11, 13.) However, the Bankruptcy Court did determine that debtor made false oaths by failing to list UGT's fraudulent conveyance action and by representing his ownership interest in the Manhattan Property as "sole tenant." (*Id.* at 11–13.) Nonetheless, the Bankruptcy Court found, in light of the entire record, that debtor did not make these false oaths with fraudulent intent. (*Id.*) Judgment entered on November 4, 2013. (R-22, Bankruptcy Court Docket; *see* R-10, Judgment.)

C. Appeal

UGT filed a notice of appeal in the Bankruptcy Court on November 13, 2013, which was docketed in this Court on December 16, 2013. UGT filed its brief on January 15, 2014. Debtor filed his brief on January 27, 2014. UGT filed its reply brief on February 10, 2014. The Court has fully considered the arguments and submissions of the parties.

II. STANDARD OF REVIEW

Rule 8013 of the Federal Rules of Bankruptcy Procedure provides that a reviewing court may "affirm, modify, or reverse a bankruptcy judge's judgment, order, or decree," or it may "remand with instructions for further proceedings." Fed. R. Bankr. P. 8013. In general, the Court reviews the Bankruptcy Court's legal conclusions *de novo*, mixed questions of fact and law *de novo*, and factual findings for clear error. *See, e.g.*, *Denton v. Hyman (In re Hyman)*, 502 F.3d 61, 65 (2d Cir. 2007); *Babitt v. Vebeliunas (In re Vebeliunas)*, 332 F.3d 85, 90 (2d Cir. 2003).

The Second Circuit has not explicitly articulated the appropriate standard of review where, as here, a case is tried on a stipulated record before a bankruptcy court. However, outside the bankruptcy context, where a case is tried before a district court on a stipulated record, it is clear that the Second Circuit's "review is *de novo* because the district court's rulings are necessarily conclusions of law or mixed fact and law." *Skoros v. City of New York*, 437 F.3d 1, 13 (2d Cir. 2006); *see Robinson v. Sheet Metal Workers' Nat'l Pension Fund, Plan A*, 515 F.3d 93, 98 (2d Cir. 2008) ("Because the district court's judgment was based entirely on a stipulated record, our standard of review for that claim is *de novo*."); *McCormick ex rel. McCormick v. Sch. Dist. of Mamaroneck*, 370 F.3d 275, 283 (2d Cir. 2004) (same); *TCG N.Y., Inc. v. City of White Plains*, 305 F.3d 67, 75 (2d Cir. 2002) (same). The same rationale applies where a case is tried on a stipulated record before a

5

bankruptcy court.[2] *See, e.g.*, *Monzingo v. Pa. Dep't of Labor & Indus. Bureau of Unemployment Benefits & Allowances (BUCBA) (In re Monzingo)*, 234 B.R. 867 (E.D. Pa. 1999) ("When the parties to an appeal have submitted their case on a stipulated record of facts, a district court makes its own independent determination regarding the disposition of the legal issues presented by the case."). *But see Brandt v. Repco Printers & Lithographics, Inc. (In re Healthco Int'l, Inc.)*, 132 F.3d 104, 108 (1st Cir. 1997) (holding that review of factual findings for clear error "is not diluted merely because parties proceed on a stipulated record"). Accordingly, because the instant case was tried on a stipulated record before the Bankruptcy Court, this Court reviews *de novo* all conclusions of the Bankruptcy Court.

III. DISCUSSION

"One of the central purposes of the Bankruptcy Code and the privilege of discharge is to allow the 'honest but unfortunate debtor' to begin a new life free from debt." *D.A.N. Joint Venture v. Cacioli (In re Cacioli)*, 463 F.3d 229, 234 (2d Cir. 2006) (quoting *Grogan v. Garner*, 498 U.S. 279, 286–87 (1991)). However, "[a] discharge under section 727 is a privilege, not a right, and may only be granted to the honest debtor." *Dubrowsky v. Estate of Perlbinder (In re Dubrowsky)*, 244 B.R. 560, 572 (E.D.N.Y. 2000). Thus, "[i]n the interest of protecting creditors," 11 U.S.C. § 727 requires the denial of discharge in certain circumstances. *Id.* "The party objecting to discharge must establish those elements by a preponderance of the evidence." *Pisculli v. T.S. Haulers, Inc. (In re Pisculli)*, 408 F. App'x 477, 479 (2d Cir. 2011) (summary order) (citing *Grogan*, 498 U.S. at 287); *see Republic Credit Corp. I v. Boyer (In re Boyer)*, 328 F. App'x 711, 714 (2d Cir. 2009) (summary order); *D.A.N. Joint Venture v. McCormack (In re McCormack)*, No. 06-1053 (BK), 2007 WL 642945, at *2 (2d Cir. Feb. 27, 2007) (summary order).

The Second Circuit has held that "§ 727 imposes an extreme penalty for wrongdoing," because it operates as "a blanket prohibition of a debtor's discharge, thereby protecting the debts owed to all creditors," and not just "specific debts incurred through fraud." *State Bank of India v. Chalasani (In re Chalasani)*, 92 F.3d 1300, 1309 (2d Cir. 1996). Accordingly, the Second Circuit construes § 727 "strictly against those who object to the debtor's discharge and 'liberally in favor of the bankrupt.'" *Id.* at 1310 (quoting *Bank of Pa. v. Adlman (In re Adlman)*, 541 F.2d 999, 1003 (2d Cir. 1976)).

With these general principles in mind, the Court turns to the specific issues raised on appeal.

A. Section 727(a)(2)(A)

The first issue on appeal is whether a preponderance of the evidence shows that

---

[2] Although the Second Circuit has not applied this well-settled rule to bankruptcy cases, it has applied the rule in the analogous situation involving tax courts. *See, e.g.*, *Gluckman v. Comm'r of Internal Revenue*, 545 F. App'x 59, 62 (2d Cir. 2013) (summary order) ("We review a decision of the tax court based on a stipulated record *de novo*."). In the context of tax court cases, the Second Circuit has noted some "tension" between this standard of review and the Second Circuit's review of mixed questions of law and fact for clear error in tax cases. *See id.* at 62 n.6 (citing *Scheidelman v. Comm'r of Internal Revenue*, 682 F.3d 189, 193 (2d Cir. 2012) (holding that mixed questions of law and fact are reviewed for clear error in tax court case)). Any such tension does not exists here, because in bankruptcy cases, mixed questions of law and fact are reviewed *de novo*. *See, e.g.*, *Vebeliunas*, 332 F.3d at 90 ("Mixed questions of fact and law are subject to *de novo* review.").

debtor concealed a secret interest in the Rockville Centre Property within one year of filing for bankruptcy. This Court concludes that it does, and remands the case to the Bankruptcy Court to determine whether debtor did so with improper intent.

1. Legal Standard

Section 727(a)(2)(A) provides the following:

> (a) The court shall grant the debtor a discharge, unless—
>
> (2) the debtor, with intent to hinder, delay, or defraud a creditor or an officer of the estate charged with custody of property under this title, has transferred, removed, destroyed, mutilated, or concealed, or has permitted to be transferred, removed, destroyed, mutilated, or concealed—
>
> (A) property of the debtor, within one year before the date of the filing of the petition.

To prove a violation of § 727(a)(2), a creditor must establish, by a preponderance of the evidence, (1) "an act (*i.e.*, a transfer or a concealment of property)"; and (2) "an improper intent (*i.e.*, a subjective intent to hinder, delay, or defraud a creditor)." *Boyer*, 328 F. App'x at 714. Moreover, the creditor must show that "*both* of these components were present during the one year period before bankruptcy." *Id.* (emphasis in original).

With respect to the first element, a concealment "has been defined as the transfer to a third party of legal title to property with the retention of a secret interest by the bankrupt." *Sacklow v. Vecchione (In re Vecchione)*, 407 F. Supp. 609, 614 (E.D.N.Y. 1976). For instance, "[a] concealment may be predicated on the retention by the bankrupt of an equitable interest in assets transferred to his wife." *Id.* In this situation, "the transfer of title represents to the world that the debtor has transferred away all his interest in the property while in reality he has retained some secret interest." *Rosen v. Bezner*, 996 F.2d 1527, 1532 (3d Cir. 1993); *see, e.g.*, *Thibodeaux v. Olivier (In re Olivier)*, 819 F.2d 550, 553 (5th Cir. 1987) ("Concealing property for purposes of section 727(a)(2)(A) can be accomplished by a transfer of title coupled with the retention of the benefits of ownership."). Of course, there must be evidence that the debtor actually retained a secret interest in property. *Thompson v. Eck*, 149 F.2d 631, 633 (2d Cir. 1945); *accord Rosen*, 996 F.2d at 1532. However, record title cannot be determinative of equitable ownership where it is alleged that the debtor concealed an interest in property by transferring record title to that property to a third party. *See, e.g.*, *Minsky v. Silverstein (In re Silverstein)*, 151 B.R. 657, 661 (Bankr. E.D.N.Y. 1993). Instead, a court may properly rely upon other evidence, such as the debtor's "retention of the benefits of ownership," in order to ascertain the existence of a secret interest in property. *Rosen*, 996 F.2d at 1532; *see, e.g. Vecchione*, 407 F. Supp. at 615 ("Persons whose intention it is to shield their assets from creditor attack while continuing to derive the equitable benefit of those assets rarely announce their purpose. Instead, if their intention is to be known, it must be gleaned from inferences drawn from a course of conduct.").

Moreover, "'[u]nder the 'continuous concealment' doctrine, a concealment will be found to exist during the year before

7

bankruptcy even if the initial act of concealment took place before this one year period as long as the debtor allowed the property to remain concealed into the critical year.'" *Boyer*, 328 F. App'x at 714–15 (quoting *Rosen*, 996 F.2d at 1531). This doctrine "recognizes that a failure to reveal property previously concealed can, in some circumstances, properly be considered culpable conduct during the year before bankruptcy warranting a denial of discharge." *Rosen*, 996 F.2d at 1531. Although the Second Circuit has not yet adopted the continuous concealment doctrine, *see Boyer*, 328 F. App'x at 714–15 (noting that the Second Circuit "has not yet addressed the issue," but assuming *arguendo* that the continuous concealment doctrine applied), the doctrine is well settled in other Circuits, *see, e.g.*, *Keeney v. Smith (In re Keeney)*, 227 F.3d 679, 685 (6th Cir. 2000); *Hughes v. Lawson (In re Lawson)*, 122 F.3d 1237, 1241 (9th Cir. 1997); *Rosen*, 996 F.2d at 1531–32; *Olivier*, 819 F.2d at 555; *Friedell v. Kauffman (In re Kauffman)*, 675 F.2d 127 (7th Cir. 1981). Moreover, lower courts in this Circuit have consistently applied the continuous concealment doctrine. *See Vecchione*, 407 F. Supp. at 614 ("It matters not how long before the filing of the petition the suspect transfer occurred because the act of concealment is considered a continuous one."); *see also Flushing Savings Bank, FSB v. Vidro (In re Vidro)*, 497 B.R. 678, 686–87 (Bankr. E.D.N.Y. 2013); *Congress Talcott Corp. v. Sicari (In re Sicari)*, 187 B.R. 861, 877 (Bankr. S.D.N.Y. 1994); *Silverstein*, 151 B.R. at 661. This Court finds the rationale for the continuous concealment doctrine to be "compelling," *Lawson*, 122 F.3d at 1241, and joins those courts who have recognized it.

As for the second element, the intent to hinder, delay, or defraud "is rarely subject to direct proof." *Boyer*, 328 F. App'x at 715. Accordingly, "courts look to see if certain 'badges of fraud,' which are strong indicia of actual fraudulent intent, are present." *Vidro*, 497 B.R. at 687; *see Boyer*, 328 F. App'x at 715 (citing *Salomon v. Kaiser (In re Kaiser)*, 722 F.2d 1574, 1582 (2d Cir. 1983)). Badges of fraud include the following:

> (1) the lack or inadequacy of consideration;
>
> (2) the family, friendship or close associate relationship between the parties;
>
> (3) the retention of possession, benefit or use of the property in question;
>
> (4) the financial condition of the party sought to be charged both before and after the transaction in question;
>
> (5) the existence or cumulative effect of a pattern or series of transactions or course of conduct after the incurring of debt, onset of financial difficulties, or pendency or threat of suits by creditors; and
>
> (6) the general chronology of the events and transactions under inquiry.

*Kaiser*, 722 F.2d at 1582–83. "The transfer of property by the debtor to his spouse while insolvent, while retaining the use and enjoyment of the property, is a classic badge of fraud." *Id.* at 1583.

### 2. Application

Here, the stipulated record demonstrates by a preponderance of the evidence that

8

debtor was concealing a secret, beneficial interest in the Rockville Centre Property within one year of filing his petition for bankruptcy. In short, after debtor and Mrs. Karanasos transferred legal title to the Rockville Centre Property to Mrs. Karanasos, debtor "'continu[ed] to treat the property in the same manner after the transfer as before the transfer.'" *Vidro*, 497 B.R. at 687 (quoting *Doubet, LLC v. Palermo (In re Palermo)*, 370 B.R. 599, 615 (Bankr. S.D.N.Y. 2007)). Specifically, debtor lived in the Rockville Centre Property and continued to make mortgage, utility, and real estate tax payments for that property. (JPTM at 4–5, ¶¶ 4–5, 11–12.) Debtor even took deductions for real estate taxes and mortgage interest payments relating to the Rockville Centre Property on his and Mrs. Karanasos's 2010 joint federal tax return. (*Id.* at 5, ¶ 11.) Moreover, in Mrs. Karanasos's own petition for bankruptcy, she listed her ownership interest in the Rockville Centre Property as a tenant by the entirety, thereby indicating her understanding that debtor retained an interest in the property. (*See id.* at 5, ¶ 13; R-20, Ex. 13, Mrs. Karanasos's Petition.) All of these facts, taken together, are sufficient to establish debtor's concealed, beneficial interest in the Rockville Centre Property. *See, e.g.*, *Keeney*, 227 F.3d at 683–84 ("A beneficial interest of ownership in the property can be inferred, however, from [debtor's] payment for and use of the properties, including his rent-free residence on each and payment of all mortgage obligations."); *Kauffman*, 675 F.2d at 128 ("[Debtor] also claims he retained no beneficial interest in the property. His assertion is belied by the evidence. [Debtor] took out several personal loans using the house as collateral. He lived in the house and continued to make mortgage, tax, and insurance escrow payments on the house. Further, the property was listed as one of his assets on personal financial statements. The evidence was sufficient to show he retained a beneficial interest in the property into the statutory period."); *Anderson v. Hooper (In re Hooper)*, 274 B.R. 210, 216 (Bankr. D.S.C. 2001) ("Courts have found a secret interest in a variety of situations, but the typical scenario is where, after transferring the property, the debtor continues to live on the property and makes mortgage, tax, and or insurance payments."); *Silverstein*, 151 B.R. at 661–62 (finding concealed property interest where debtor had transferred house to his wife but continued to live there, paid mortgage, taxes, and maintenance on the property from a joint account, and "filed joint tax returns with his wife showing interest deductions from the home's mortgages"); *cf. Hooper*, 274 B.R. at 216–17 (finding insufficient evidence of secret interest where debtors continued to live in the house at issue but did not make any mortgage, tax, or insurance payments).

Moreover, nothing in the stipulated record supports a contrary conclusion. The Court has considered debtor's explanation for the transfer of his legal title to the Rockville Centre Property, as well as the purported consideration involved, to determine whether they tend to show that debtor conveyed all of his interest in that property to Mrs. Karanasos in 2008. *Cf. Boyer*, 328 F. App'x at 715 ("If the 1989 transfer of property was bona fide, the Debtor could not have retained a concealed interest in those assets, and the alleged concealment of a property interest could not have continued into the one-year reach-back period."). They do not. As noted *supra*, although the deed itself indicates that $100,000.00 in consideration supported the conveyance (R-16, Ex. 6, Deed), the circumstances surrounding the conveyance were more complicated. Mrs. Karanasos did not give debtor $100,000.00 in exchange for debtor's interest in the Rockville Centre

9

Property. Instead, as a condition for allowing debtor to draw $100,000.00 on the Chase HELOC that encumbered their home, Mrs. Karanasos demanded that debtor remove his name from the deed "to protect her and [their] children." (Debtor Dep. at 41–43.) The record is unclear as to what benefit Mrs. Karanasos actually received from this arrangement (as her house remained the collateral for debtor's loan, even after debtor took his name off the deed to the house.) However, from the limited record, it appears most likely that Mrs. Karanasos demanded the deed to the property as security for debtor's having borrowed an additional $100,000.00 against the marital home. If that were true, then the conveyance would be a mortgage, and debtor would have retained an ownership interest in the property. *See* N.Y. Real Prop. Law § 320 ("A deed conveying real property, which, by any other written instrument, appears to be intended only as a security in the nature of a mortgage, although an absolute conveyance in terms, must be considered a mortgage . . . ."); *Leonia Bank v. Kouri*, 772 N.Y.S.2d 251, 254 (N.Y. App. Div. 2004) ("'[T]he courts are steadfast in holding that a conveyance, whatever its form, if in fact given to secure a debt, is neither an absolute nor a conditional sale, but a mortgage, and that the grantor and grantee have merely the rights and are subject only to the obligations of mortgagor and mortgagee.'" (quoting *Mooney v. Byrne*, 163 N.Y. 86, 93 (1900))). Debtor's retention of an interest in the Rockville Centre Property under these terms would be consistent with the other facts in the stipulated record, discussed *supra*, showing that debtor continued to enjoy the benefits of ownership. Overall, whether debtor's transfer of the Rockville Centre Property to his wife was really a mortgage or a total sham transaction is immaterial. What matters is that no facts concerning the transfer itself contradict the other evidence in the record establishing that debtor retained a secret interest in the Rockville Centre Property.

In reaching a different conclusion, the Bankruptcy Court's reliance on *Rosen* was misplaced. In that case, before the debtor filed for bankruptcy, he had transferred his interest in his primary residence to his wife for no consideration. 996 F.2d at 1529. Notwithstanding his transfer of legal title to his home, the debtor "continued to live in this residence, continued to make mortgage payments, and continued to be obligated on the mortgage notes on the property." *Id.* at 1529–30. Consistent with other decisions in this area, *see supra*, the Third Circuit held that the debtor's "retention of the benefits of ownership [was] evidence tending to show that [the debtor] did retain a secret interest pursuant to an express or tacit agreement with his wife, such as a right to reconveyance on demand or a right to live in the house rent-free." 996 F.2d at 1532. Significantly, the Third Circuit did not hold that such evidence was insufficient to find by a preponderance of the evidence that the debtor had concealed a secret interest in property. Instead, the Third Circuit held only that such evidence was insufficient to conclude as a matter of law, on a motion for summary judgment, that the debtor retained a secret interest, in light of the debtor's claim that he had transferred all of his interest to his wife and was living in the house subject to eviction at will. *Id.* Given the instant case's different procedural posture, *Rosen* is relevant only insofar as it holds that a debtor's retention of the benefits of ownership in property, after transferring legal title to another, is evidence of the debtor's continuing, secret interest in such property.

Overall, in this Court's view, UGT demonstrated by a preponderance of the

evidence that debtor concealed a beneficial interest in the Rockville Centre Property within one year of filing for bankruptcy. The issue remains whether debtor harbored an improper intent within one year of filing his petition. The Bankruptcy Court did not reach this issue. Accordingly, the Court remands this case to the Bankruptcy Court for a determination concerning debtor's intent. On remand, the Bankruptcy Court retains the discretion to rely solely on the stipulated record, request supplemental submissions, and/or conduct a trial on any disputed issues.

### B. Section § 727(a)(4)(A)

The second issue on appeal is whether debtor made false oaths in his bankruptcy petition and accompanying documents, and if so, whether he did so with fraudulent intent. This Court concludes that debtor made two false oaths, and remands the case to the Bankruptcy Court to determine, in light of both false oaths, whether debtor harbored fraudulent intent.

#### 1. Legal Standard

Section 727(a)(4)(A) states the following:

> (a) The court shall grant the debtor a discharge, unless—
>
> (4) the debtor knowingly and fraudulently, in or in connection with the case—
>
> (A) made a false oath or account.

11 U.S.C. § 727(a)(4)(A). To prove an objection to discharge under § 727(a)(4)(A), the party objecting to discharge must establish, by a preponderance of the evidence, that: "(1) the debtor made a statement under oath; (2) the statement was false; (3) the debtor knew that the statement was false; (4) the debtor made the statement with fraudulent intent; and (5) the statement related materially to the bankruptcy case." *Dubrowsky*, 244 B.R. at 572 (citations omitted); *see Boyer*, 328 F. App'x at 715.

With respect to the first and second elements, "[b]oth omissions and affirmative misstatements qualify as false statements under § 727(a)(4)(A)." *E.g. Moreo v. Rossi (In re Moreo)*, 437 B.R. 40, 61 (E.D.N.Y. 2010). Moreover, a debtor's bankruptcy petition and the accompanying schedules constitute statements under oath for purposes of Section 727(a)(4)(A). *E.g. id.* at 59 (citing *Nof v. Gannon (In re Gannon)*, 173 B.R. 313, 320 (Bankr. S.D.N.Y. 1994)). Accordingly, the debtor's omission of a fact from his petition and accompanying schedules constitutes a false statement under oath.

The third element, knowledge of the falsity, "is satisfied by showing that 'the bankrupt knows what is true and, so knowing, wilfully and intentionally swears to what is false.'" *Id.* at 62 (quoting *In re Kaufhold*, 256 F.2d 181, 185 (3d Cir. 1958)). "Courts may consider the debtor's education, business experience, and reliance on counsel when evaluating the debtor's knowledge of a false statement, but the debtor is not exonerated by pleading that he or she relied on patently improper advice of counsel." *Montey Corp. v. Maletta (In re Maletta)*, 159 B.R. 108, 112 (Bankr. D. Conn. 1993) (quoting *Zitwer v. Kelly (In re Kelly)*, 135 B.R. 459, 462 (Bankr. S.D.N.Y. 1992)); *see, e.g.*, *Pergament v. Smorto (In re Smorto)*, No. 07-CV-2727 (JFB), 2008 WL 699502, at *5 (E.D.N.Y. Mar. 12, 2008); *accord Perrine v. Speier (In re Perrine)*, No. CC-07-1470-SnPaMk, 2008 WL 8448835, at *8 (B.A.P. 9th Cir. July 10, 2008).

The fourth element, fraudulent intent, can be proven by evidence of either (1) actual intent to deceive or (2) reckless disregard for the truth. *Adler v. Ng (In re Adler)*, 395 B.R. 827, 843 (E.D.N.Y. 2008); *see also Pereira v. Gardner (In re Gardner)*, 384 B.R. 654, 667 (Bankr. S.D.N.Y. 2008) (citations omitted). Fraudulent intent "will not be found in cases of ignorance or carelessness." *Gardner*, 384 B.R. at 667. As noted *supra*, "[f]raudulent intent is rarely susceptible to direct proof." *Kaiser*, 722 F.2d at 1582. Accordingly, the badges of fraud discussed *supra* are relevant to this determination. *See, e.g.*, *id.* In addition, "[t]he Second Circuit has recognized that fraudulent intent may be inferred from a series of incorrect statements and omissions contained in the schedules." *Moreo*, 437 B.R. at 62; *see Dubrowsky*, 244 B.R. at 576 ("As the Second Circuit has recognized, fraudulent intent may be inferred from a series of incorrect statements contained in the schedules.").

As for the fifth element, "[a]n item is material if it is related to the debtor's 'business transactions or estate which would lead to the discovery of assets, business dealings, or existence or disposition of property.'" *Moreo*, 437 B.R. at 65 (quoting *Carlucci & Legum v. Murray (In re Murray)*, 249 B.R. 223, 228 (E.D.N.Y. 2000)). "'Virtually every imaginable asset becomes property of the estate upon the filing of a bankruptcy petition.'" *Id.* (quoting *Murray*, 249 B.R. at 230). "'Lying about assets that are part of the estate—even if possibly exempt—certainly bears a relationship to the estate.'" *Id.* (quoting *Murray*, 249 B.R. at 230).

2. Application

On appeal, UGT contends that the following statements in, and omissions from, debtor's petition and accompanying schedules warrant a denial of debtor's discharge under § 727(a)(4)(A):

(1) debtor's use of the term "sole tenant" to describe his ownership interest in the Manhattan Property;

(2) debtor's failure to list his ownership interest in the Rockville Centre Property; and

(3) debtor's failure to list UGT's fraudulent conveyance action against debtor.[3]

For the following reasons, the Court concludes that only the second and third omissions were false oaths. The Court remands the case to the Bankruptcy Court to determine whether, in light of these two false oaths and other evidence, debtor made them with fraudulent intent.

a. Use of the Term "Sole Tenant"

First, the Court rejects UGT's contention that debtor's use of the term "sole tenant" was a false oath. To be sure, New York law does not recognize the term "sole tenant" or "sole tenancy" to describe an ownership in real property. Specifically, New York law identifies estates "as to the number of persons owning an interest therein" as follows: (1) in severalty; (2) joint tenancy; (3) tenancy in common; and (4) tenancy by the entirety. N.Y. Est. Powers & Trusts Law § 6-2.1. A tenancy in severalty is the proper

---

[3] UGT had also argued in the Bankruptcy Court that debtor's valuation of the Manhattan Property at $800,000.00 constituted a false oath. (*See* Bankr. Ct. Op. at 12–13.) The Bankruptcy Court determined that UGT had failed to provide any evidence concerning the accurate value of the Manhattan Property. (*Id.* at 13.) UGT does not press this claim on appeal.

term to describe sole ownership under New York law. 1 *New York Law & Practice of Real Property* § 4:6 (2d ed. 2013); *accord* 4 *Thompson on Real Property* § 31.01 (David A. Thomas ed., Supp. 2013). However, sole ownership of real property has also been described as a "sole tenancy." *See Personal Financial Planning Handbook: With Forms & Checklists* ¶ 12.05[2][a] (2d ed. Supp. 2013) ("Sole tenancy is ownership by a single party with complete title to the property."); *cf. United States v. Craft*, 553 U.S. 274, 292 (2002) (noting that, under Michigan law and English common law, a tenancy by the entirety "does not belong to either spouse, but to a single entity composed of the married persons," and that such an estate thus "constitutes an indivisible 'sole tenancy'"). Accordingly, although debtor's use of the term "sole tenant" to describe a tenancy in severalty was technically incorrect under New York law, the Court cannot conclude that it was a false statement. Moreover, even assuming *arguendo* that it were false, the Court accepts debtor's explanation for his use of the term as one that is used in the mortgage business. (*See* Debtor Aff. ¶ 6.) Thus, even if false, the statement was not fraudulent.

b. Failure to List the
Rockville Centre Property

As discussed *supra*, this Court has concluded that debtor maintained a secret ownership interest in the Rockville Centre Property within one year of filing his bankruptcy petition. Accordingly, debtor's failure to list this ownership interest in his petition and accompanying schedules constituted a false oath that related materially to his bankruptcy case. Contrary to debtor's argument on appeal, it does not matter whether the property "had virtually no equity." (Appellee Br. at 2). "A debtor may not pick and choose among his assets and holdings so as to schedule only those which he may deem to be valuable, important or relevant. Rather, a debtor is obliged to completely and accurately list all property of every kind and nature, tangible and intangible, legal and equitable, which may comprise his bankruptcy estate, and to respond truthfully to all questions in the Schedules and Statement of Financial Affairs." *Sicari*, 187 B.R. at 881.

In sum, this Court concludes that debtor made a false oath in failing to list his ownership interest in the Rockville Centre Property. The only remaining issue is whether debtor did so knowingly and fraudulently. The Bankruptcy Court did not reach this issue because the Bankruptcy Court determined that debtor had no ownership interest in the Rockville Centre Property. In light of this Court's determination to the contrary, the Court remands the case to the Bankruptcy Court to determine debtor's intent in the first instance.

c. Failure to List UGT's
Fraudulent Conveyance Action

Finally, debtor's petition and accompanying schedules fail entirely to mention UGT's fraudulent conveyance action against debtor in New York state court. A debtor's failure to list all lawsuits to which he is a party constitutes a material, false oath for purposes of § 727(a)(4)(A). *See, e.g.*, *Moreo*, 437 B.R. at 61–65 (holding that debtor's failure to list three lawsuits in his petition and accompanying schedules warranted denial of discharge under § 727(a)(4)(A)); *O'Connell v. DeMartino (In re DeMartino)*, 448 B.R. 122, 129 (Bankr. E.D.N.Y. 2011) (denying discharge to debtor under § 727(a)(4)(A), based in part on fact that debtor listed only some lawsuits to which he was a party); *see also Castillo v. Casado (In re Casado)*, 187 B.R. 446, 450 (Bankr. E.D.N.Y. 1995) ("The Debtor is

13

required to notify creditors through the schedules and statement of financial affairs of any litigation in which he is involved.").

Again, the only issue remaining is whether debtor made this false oath knowingly and fraudulently. Although debtor failed to provide an explanation for this omission, the Bankruptcy Court found no fraudulent intent on the part of debtor. However, the Bankruptcy Court's determination on this issue was contingent upon its finding that debtor had not concealed an interest in the Rockville Centre Property. (*See* Bankr. Ct. Op. at 12 (finding no fraudulent intent when considering the omission in light of debtor's entire petition and accompanying schedules).) The Bankruptcy Court should re-evaluate this conclusion in light of the fact that debtor not only failed to list the fraudulent conveyance action, but also failed to list his interest in the Rockville Centre Property. *See, e.g.*, *Dubrowsky*, 244 B.R. at 576 ("As the Second Circuit has recognized, fraudulent intent may be inferred from a series of incorrect statements contained in the schedules.").

\* \* \*

In sum, the Court concludes that debtor made two false oaths: (1) failure to disclose his interest in the Rockville Centre Property; and (2) failure to disclose UGT's fraudulent conveyance action against him. The Court remands the case to the Bankruptcy Court for a determination of debtor's state of mind concerning these false oaths.

IV. CONCLUSION

For the reasons set forth herein, the Court vacates the judgment of the Bankruptcy Court, and remands the case to the Bankruptcy Court for further proceedings consistent with this Memorandum and Order. The Clerk of the Court shall close the case.

SO ORDERED.

_____
JOSEPH F. BIANCO
United States District Judge

Dated: September 5, 2014
Central Islip, NY

\* \* \*

Appellant is represented by Daniel Walsh of Belowich & Walsh LLP, 445 Hamilton Avenue, Suite 1102, White Plains, NY 10601. Appellee is represented by John M. Stravato, Esq., P.O. Box 298, Bethpage, NY 11717.